# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| MARY DENISE BURTON,<br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 16-00210-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Denise Burton brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 17, 18).

Upon consideration of the parties' briefs (Docs. 19, 20, 23) and those portions of the administrative record (Doc. 16) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised,[1] the Court finds

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 25, 26).

that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** under sentence four of § 405(g).

## I.  Background

On December 12, 2012, Burton filed applications for a period of disability, DIB, and SSI with the Social Security Administration ("SSA"), alleging disability beginning December 1, 2008.[2] After her applications were initially denied, Burton requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review, and a hearing was held on September 23, 2014. On October 16, 2014, the ALJ issued an unfavorable decision on Burton's applications, finding her "not disabled" under the Social Security Act and thus not entitled to benefits. (*See* R. 20 – 38). The Commissioner's decision on Burton's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied Burton's request for review of the ALJ's decision on March 8, 2016. (R. 1 – 5). On May 12, 2016, Burton filed this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* (Doc. 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of

---

[2]   DIB provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).
    "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202–03 (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. <u>Standards of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))). However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in

original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the

administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence.

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[3]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[4]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[4] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)).

"This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

### III. Analysis

At Step One, the ALJ determined that Burton had not engaged in substantial gainful activity since the alleged disability onset date, December 1, 2008. (R. 25). At Step Two, the ALJ determined that Burton had the following severe impairments: history of multifocal choroiditis, peripapillary choroidal neovascularization, and status-post epimacular proliferation removal, resulting in chronic low vision left eye; status post deep vein thrombosis left lower extremity; mild degenerative disc disease lumbar spine; neuropathy; and obesity. (R. 25 – 27). At Step Three, the ALJ found that Burton did not have an impairment or

combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments. (R. 27).

At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Burton had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967b[5] except with the following

---

[5] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Light work involves lifting no more than 20 pounds at a time with frequent lifting

limitations: lift and/or carry 20 pounds occasionally and 10 pounds frequently; occasionally use both arms for pushing/pulling; sit/stand every 45 minutes; occasionally stoop, balance, kneel, crouch, and crawl; never climb ladder, ropes or scaffolds; avoid concentrated exposure to extreme cold, heat, wetness, humidity, vibrations, noise, fumes, odors, dust, and gases; avoid all exposure to hazardous, unprotected heights, dangerous machinery, and uneven surfaces; and would have 1-2 unplanned absences per month. [Burton] would have the following non-exertional limitations: no more than simple, short instructions and simple work-related decisions with few work place changes (unskilled and low stress), no work at fixed production rate, and unable to work in close proximity to others – easily distracted (concentrate)." (R. 27 – 36).

Based on this RFC, the ALJ determined that Burton was unable to perform any past relevant work. (R. 36). At Step Five, the ALJ, after taking testimony from a vocational expert, found that there exist significant numbers of jobs in the national economy that Burton can perform given her RFC, age, education, and work experience. (R. 36 – 37). Thus, the ALJ found that Burton was not disabled under the Social Security Act. (R. 37 – 38).

---

or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Burton argues that the ALJ reversibly erred in failing to fully account for the medial opinion of consultative examining optometrist Dr. Craig McNamara. The ALJ summarized Dr. McNamara's notes and opinions as follows:

> On March 27, 2013, Craig Richard[] McNamara, OD, performed a consultative eye examination with visual fields. Visual Acuity for Distance without glasses, Right 20/60+2 and LEFT Hand motion at 3 feet, and with best correction, RIGHT 20/20 and LEFT No Improvement. Reading or Close Work without glasses, RIGHT 20/400 and LEFT Hand motion at 3 feet, and with best correction RIGHT 20/25 and LEFT No Improvement. Visual field OD was normal and OS unable to evaluate. Muscle function was normal. The claimant did not have useful binocular vision in all directions for distance or near due to extremely reduced vision LEFT eye. Depth perception was not present. Color perception was normal. Fundus examination – Normal OD; OS – optic atrophy, Peripapillary choroidal atrophy, and diffuse choroidal atrophy. Dr. McNamara reported the claimant's eye pathology as follows: Multifocal choroiditis, peripapillary neovascularization. The claimant's eye condition was stable. Prognosis was guarded. No treatment was recommended. She was to avoid operating machinery at near distance. The patient's behavior and mobility were considered normal. Dr. McNamara reported his diagnoses as: HIAIP; Pseudophakia OS and OS/Optic atrophy/Choroidal atrophy. Dr. McNamara was asked to provide a statement, based on his medical findings, expressing his opinion about the claimant's ability, despite the impairments, to do work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling. Dr. McNamara stated, "I see no reason the patient should have any difficulties with the above listed activities." (Exhibit B7F [R. 353 – 363]).

(R. 29 – 30).

This summary was repeated later in the ALJ's decision, absent the observation "she was to avoid operating machinery at near distance," and was followed by the observation that "[t]he medical evidence does not reveal a visual impairment that would be disabling or that would prevent work at the above stated residual functional capacity." (R. 33). Later still, the ALJ assigned "significant

weight to Dr. McNamara's opinion regarding the claimant's visual functional abilities[,]" explaining:

> His opinion is well supported by his own clinical examinations and testing and it is generally consistent with the record as a whole. Dr. McNamara stated that the claimant's eye condition was stable, her prognosis was guarded, and no treatment was recommended. The only restriction he noted was that she was to avoid operating machinery at near distance. Dr. McNamara stated that he saw no reason the claimant should have any difficulties with sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling.

(R. 36). The ALJ further observed that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (R. 36).

At Step Five, the ALJ's first hypothetical question to the vocational expert (VE) asked whether jobs exist in the national economy for an individual with Burton's age, education, work experience, and RFC.[6] The VE responded that such

---

[6] At Step Five, "the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant 'can make an adjustment to other work.' 20 C.F.R. § 404.1520(a)(4)(v). Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled." *Phillips*, 357 F.3d at 1239 (footnote omitted). "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocational Guidelines … The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. []When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1239–

an individual would be unable to perform Burton's past work but could perform the jobs of garment folder, general cashier, and agricultural sorter, all of which were classified as "light, unskilled." (R. 85 – 88). The ALJ relied on the VE's answer to the first hypothetical in finding that Burton could perform work that exists in significant numbers in the national economy at Step Five of his decision. (*See* R. 36).

After a second hypothetical not material to the present issue, the ALJ and the VE engaged in the following exchange:

> ALJ: Okay. Now, Williams, I'd like you to just go back to that first hypothetical. And with that first hypothetical in mind, do you need it again --
>
> VE: I have them --
>
> ALJ: You have them there [phonetic]. I would like to add another restriction from a vision standpoint which would be near and far acuity would be affected but corrected with eye lenses. And, you know, would there be any problem with someone who would be -- who would have a restriction placed on bright lighting in excess of 60 watts? Would there be any problem with finding jobs such as that?
>
> VE: No sir. Not with that [phonetic].
>
> ALJ: I was just curious.
>
> VE: Not to say it doesn't happen, but --
>
> ALJ: Okay. Would the jobs that you gave me that first hypo if I added back in near and far acuity?
>
> VE: Near acuity is a problem with unskilled light work. So that would -- that would certainly lower the job [ INAUDIBLE] --
>
> ALJ: There'd still be jobs, just a lower number.

40.

VE: Correct. I'd have to look at the rest of the hypothetical [INAUDIBLE].

ALJ: And you --

VE: But just based on -- no, I've got it written down. I'm just saying just based on near acuity there would be other jobs whether -- but what I wanted to clear up before I started, the 60 watts, we're not considering that part? That was just something else?

ALJ: No. No. No.

VE: Okay.

ALJ: Just -- that was just sort of a sort of a side job that they had [phonetic].

VE: That was just -- okay. All right. So based on -- so the near acuity would be -- how it's listed in the raw material is constant, frequent.

ALJ: Frequent.

VE: Frequent near acuity. And did you say no depth perception or did you --

ALJ: No. That's the only thing restricting the vision.

VE: Is near acuity?

ALJ: And far acuity.

VE: And far acuity also frequent. All right. [INAUDIBLE]

ALJ: Sure.

VE: Garment --

ALJ: I guess that's my question is would these three jobs [INAUDIBLE] garment folder?

VE: Garment folder requires frequent near acuity. Far acuity is not involved in that [phonetic].

> ALJ: Cashier.
>
> VE: Cashier, general - near acuity is frequent. These are based on minor vision in the workplace [phonetic]. Do you want the third one?
>
> ALJ: Agricultural sorter.
>
> VE: Near acuity -- so all of the jobs I gave --
>
> ALJ: And would there be other jobs?
>
> VE: [INAUDIBLE]
>
> ALJ: And I would suspect that the previous work would be out as well?
>
> VE: Correct. Those, well – it requires constant near acuity. I did find a few jobs that did not require those things. But those jobs all require --- would not allow sit/stand option. So I would have to say no work.
>
> ALJ: All right…

(R. 90 – 92).

While neither the testimony nor the transcript is a model of clarity, it appears, as Burton suggests in her brief, that the ALJ posed a third hypothetical to the VE identical to the first hypothetical except that it included additional limitations for near and far vision acuity, limitations which Dr. McNamara's medical opinion assigned Burton. (*See* R. 29 – 30 ("The claimant did not have useful binocular vision in all directions for distance or near due to extremely reduced vision LEFT eye.")). As Burton correctly points out, at Step Four the ALJ expressly acknowledged Dr. McNamara's finding that Burton "did not have useful binocular vision in all directions for distance or near due to extremely reduced vision LEFT eye," and none of the other medical records discussed by the ALJ concerning Burton's eye impairments (i.e. those of Drs. Song and Parma) contradict

Dr. McNamara on this point. The VE answered that, with the addition of these limitations, he "would have to say no work" for Burton. (R. 92).[7] The ALJ's decision makes no mention of this third hypothetical at Step Five. (*See* R. 36 – 37).

An ALJ is "not required to include findings in [a VE] hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. Here, however, the ALJ assigned "significant weight to Dr. McNamara's opinion regarding [Burton's visual functional abilities," without expressly addressing, much less discrediting, Dr. McNamara's finding that Burton "did not have useful binocular vision in all directions for distance or near due to extremely reduced vision LEFT eye."[8] (R. 29 – 30). Indeed, the ALJ made a point of including these limitations in his third hypothetical to the VE, with the VE responding that Burton would be unable to find other work. Thus, the ALJ was faced with a clear conflict between the VE's testimony and his own determination at Step Four that the "medical evidence does not reveal a visual impairment that would be disabling or that would prevent work" (R. 33), a conflict which the ALJ failed to acknowledge,

---

[7] The Commissioner does not contest Burton's characterization of the VE's testimony in her response brief. Moreover, given that it becomes the Commissioner's burden at Step Five to prove that the claimant is capable of engaging in another kind of substantial gainful employment that exists in the national economy, *see Jones v. Apfel*, 190 F.3d at 1228, it was the ALJ's burden to ensure that the VE gave clear testimony to support the Step Five burden, and ambiguities in the transcript are construed against the Commissioner.

[8] The Commissioner claims "the weak link in Plaintiff's argument is that, with correction, Plaintiff has perfect distance vision in her right eye (20/20), and almost perfect near vision in her right eye (20/25)" (Doc. 23 at 8 (citing R. 354)). The undersigned finds this argument unpersuasive, given the fact that Dr. McNamara expressly identified Burton's reduced **left** eye vision as the cause of her near and far acuity limitations.

much less resolve, in his decision. "The [Commissioner], and not the court, is charged with the duty to weigh the evidence, **to resolve material conflicts in the testimony**, and to determine the case accordingly." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam) (emphasis added). Moreover, "[a]n administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers." *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987).[9] [10]

---

[9] *Accord Angel v. Barnhart*, 329 F.3d 1208, 1212 (10th Cir. 2003) ("In performing his step four analysis, the ALJ ignored and failed to address Dr. Schneider's testimony at the hearing, which is supported by her medical records, that Angel needs a sterile environment in which to catheterize herself due to the risk of infection. This omission is significant because, following Dr. Schneider's testimony, the vocational expert (VE) testified, in response to a hypothetical question posed by Angel's counsel, that the requirement of providing Angel with a sterile environment, which would basically require that she have a personal, or private, bathroom, 'would have a negative impact ... [and] would [not] preclude all employment, but it would be rather significant in reducing the occupational base.' []Dr. Schneider's testimony, and the related testimony of the VE, is supported by substantial medical evidence in the record showing that Angel is at high risk of contracting recurrent urinary tract infections. We therefore agree with Angel that the ALJ's failure to address the testimony is reversible error." (citing, *inter alia*, *Campbell*, 822 F.2d at 1523 n.6) (record citations omitted)); *Arrington v. Apfel*, 185 F.3d 873 (10th Cir. 1999) (per curiam) (unpublished) ("[T]he hypothetical questions posed to the VE were problematic. The first question, based on Dr. Standefer's findings and plaintiff's condition as of shortly after plaintiff's accident, elicited a series of jobs the VE thought plaintiff could perform, most of which were at least semiskilled. With the additional restrictions of numbness in her dominant hand, however, the VE in his answers to the second and third questions stated there were no jobs she could perform. We have held that an ALJ may not ask a VE a hypothetical question based on substantial evidence and then ignore unfavorable answers." (citing *Campbell v.*, 822 F.2d at 1523 n.6)).

[10] The undersigned and the Eleventh Circuit have found that similar errors involving multi-faceted medical opinions merited remand. In *Smith v. Colvin*, Civil Action No. 2:13-00275-N, 2014 WL 518057 (S.D. Ala. Feb. 10, 2014), the ALJ clearly relied on some parts of a medical opinion to support her determinations at Step Two

Accordingly, the Court **SUSTAINS** Burton's claim that the ALJ reversibly erred in failing to address with particularity Dr. McNamara's opinion that Burton's near and far visual acuity was limited.[11]  Thus, the Commissioner's final decision on Burton's applications for benefits is due to be **REVERSED** and **REMANDED** for a

---

and Step Four, but did not acknowledge rejecting, or even considering, a portion of that opinion reflecting that the claimant would have to miss 1 – 2 days of work a month due to her psychiatric symptoms.  2014 WL 518057, at *4.  This omission was deemed "significant" because, in response to the ALJ's hypothetical that incorporated that particular limitation, the VE had testified that employers would not tolerate such a rate of absenteeism.  *Id.*  *See also Caffey v. Colvin*, No. CV 15-00490-N, 2016 WL 6436564, at *11 – 12 (S.D. Ala. Oct. 28, 2016) (similar).

In *Dempsey v. Commissioner of Social Security*, 454 F. App'x 729 (11th Cir. 2011) (per curiam) (unpublished), the ALJ addressed and discounted one opinion, regarding the number of days of work per month the claimant would miss due to her impairments, contained in a treating physician's questionnaire, but did not mention another opinion, regarding the claimant's ability to concentrate, contained in the same questionnaire.  454 F. App'x at 733.  The Eleventh Circuit held that the "ALJ erred when he failed to mention, much less consider, [the treating physician]'s opinion of Dempsey's ability to concentrate" because the opinion was "contrary to the ALJ's finding in his RFC assessment that Dempsey had no significant mental limitations[,]" and because "[w]hether or not Dempsey has an inability to concentrate [wa]s significant because the vocational expert testified that an individual with all of Dempsey's physical limitations whose pain and other symptoms would interfere with the attention and concentration needed to perform simple work tasks would be precluded from performing any work." *Id.* at 733 & n.6.

[11] Burton's only other claim of reversible error is premised on the contention that the ALJ was required to support each aspect of his RFC with the opinion of a medical professional and that "[h]is reliance on his own unexplained lay interpretation of the medical data violates the regulations and renders the RFC unsupported by substantial evidence." (Doc. 19 at 14).  The undersigned has previously rejected a similar argument after examining relevant persuasive authority, *see Fritts v. Colvin*, Civil Action No. 15-00209-N, 2016 WL 3566866, at *7 – 9 (S.D. Ala. June 24, 2016), and Burton does not persuade the undersigned to depart from that reasoning here.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity.").  Accordingly, Burton's second claim of error is **OVERRULED**.

rehearing under sentence four of § 405(g). On remand, the Commissioner must resolve the material conflict between Dr. McNamara's opinion and the VE's testimony identified in this opinion.[12]

## IV. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued March 8, 2016, denying Burton's applications for a period of disability, DIB, and SSI is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Burton a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

---

[12] Generally, remand to the Commissioner for further proceedings "is warranted where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). This Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Id. See also Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."). Burton has not requested that this Court direct an award of benefits, instead requesting only "that this matter be remanded for further administrative proceedings." (Doc. 19 at 18). Moreover, reversal is based on the Commissioner's failure to resolve material conflicts in the evidence, and it is not clear that the cumulative effect of the evidence establishes disability without any doubt. Thus, the Court will reverse and remand this action to the Commissioner for further proceedings.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Burton be awarded Social Security benefits on the subject applications following this remand, the Court hereby grants Burton's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[13] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 10th day of May 2017.

>  */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**

---

[13] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").